UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPRINT SPECTRUM L.P. d/b/a <br> SPRINT PCS, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF ST. CHARLES, MISSOURI, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:04CV1144 RWS <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM AND ORDER**

Plaintiff Sprint entered into a lease agreement with the owner of a parcel of land to erect a wireless telecommunications tower located in the county of St. Charles, Missouri. Sprint applied for a conditional use permit with Defendant County of St. Charles. St. Charles denied Sprint's application. Sprint claims that St. Charles' denial of the application was in violation of the Federal Telecommunications Act of 1996 ("TCA") because St. Charles did not issue a "writing" and failed to rely on "substantial evidence" in reaching its decision. Sprint moves for summary judgment on these grounds and seeks an order directing St. Charles to issue the conditional use permit. Because St. Charles failed to comply with the relevant provisions of the TCA, I will grant Sprint's motion for summary judgment.

*Background*

Sprint, a wireless telecommunications services provider, wants to build a wireless telecommunications tower in St. Charles county. To build its tower, Sprint entered into a land lease with Agape Word Center, the owner of a parcel of land, 4.78 acres in size, located within unincorporated St. Charles county. Agape's property is zoned as an agricultural district.

Section 405.080(C) of St. Charles' Unified Development Ordinance (zoning code) allows the construction of a telecommunications tower as a conditional use on land within an agricultural district. Sections 405.505 and 405.510 of the zoning code provide the procedure and standard of review for an application of a conditional use permit for a telecommunications tower. St. Charles was bound to follow the requirements of these sections, as well as the requirements of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332 *et seq.*, in reaching decisions on conditional use applications for the construction of telecommunication's towers.

On May 12, 2004, Sprint filed an application for a conditional use permit with St. Charles to construct a 180-foot tower on Agape's property. St. Charles' zoning code does not limit the height of such a tower. On June 16, 2004 the Planning Division Staff of St. Charles recommended approval of the tower, but with a reduction in height from 180 feet to 150 feet.

On June, 16, 2004, a hearing of Sprint's application was held by St. Charles' Planning and Zoning Commission. Prior to the hearing the City Planner for Wentzville, Missouri, sent a letter to St. Charles' Director of Planning and Zoning, opposing the tower on the basis that the proposed location of the tower would not comply with portions of Wentzville's zoning ordinances. The proposed site of the tower, however, is not in Wentzville.

In addition, St. Charles received a petition opposing the tower, (with a total of eighty-seven signatures), based on concerns over the effect on property values and aesthetics. It is unclear how many of the petitioners actually lived in the unincorporated part of the county where the tower is proposed to be erected. At the June 16th hearing, two residents appeared before the Commission and raised concerns similar to those of the petitioners. None of the concerns raised by any of these parties were supported by any evidence.

On July 12, 2004, the St. Charles County Council held a meeting regarding Sprint's application. The concerns of the City of Wentzville, the citizens who signed the petition and the residents who spoke at the June 16th meeting were discussed by the County Counsel. On July 27, 2004, the County Counsel held a second meeting regarding Sprint's application and voted to deny it. The County Counsel issued a letter to Sprint on July 30, 2004, which simply denied Sprint's application without any explanation.

On August 26, 2004 Sprint filed this Complaint against St. Charles. The Complaint alleges, in pertinent part, that St. Charles' denial of the application violated two provisions of the Federal Telecommunications Act. Sprint alleges that St. Charles failed to provide a "writing" stating the reason for its decision and that its decision was not supported by "substantial evidence" contained in the written record as required by the TCA. The remedy Sprint seeks is an injunction directing St. Charles to issue the conditional use permit sought by Sprint.

On October 5, 2004, sixty-six days after denying Sprint's application and forty days after Sprint filed this lawsuit, the County Council issued a "Findings of Fact, Conclusions, and Decisions" in support of it's denial of Sprint's conditional use application.

In its Findings, St. Charles indicated that the application was denied due to opposition by the City of Wentzville and local residents, the urbanization of the area near the proposed construction and concerns "as to whether this [the land owned by Agape in St. Charles] is the appropriate site for this 180 foot tower," and the proposed height of 180 feet that exceeds staff recommendations of 150 feet.

Sprint has filed two motions for summary judgment that are now before me. The first alleges that St. Charles' denial was not "in writing" as required by the TCA. The second asserts

that St. Charles failed to offer "substantial evidence" in support of its denial as required by the TCA.

*Standard of Review*

A district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ..." when considering whether to grant summary judgment. Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

The goal of the Federal Telecommunications Act is "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of

advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition...." Independent Wireless One Corp. v. Town of Charlotte, 242 F. Supp. 2d 409, 414 (D. Vt. 2003) (internal quotations omitted). In 1996, "Congress sought to strike a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control of siting of towers." Town of Amherst v. Omnipoint, 173 F.3d 9, 13 (1st Cir. 1999). Congress attempted to reconcile these two conflicting goals in the TCA by explicitly preserving local zoning authority over the siting of wireless facilities while simultaneously limiting local regulation.

The TCA limits local discretion by requiring that: "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be <u>in writing</u> and supported by <u>substantial evidence</u> contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). These limitations on local authority form the basis of Sprint's summary judgment motions. Sprint alleges that the denial was not "in writing," nor was there "substantial evidence" in support of St. Charles' denial of Sprint's application.

*A. In Writing*

St. Charles' initial letter to Sprint on July 30, 2004, simply stated that its application for a conditional use permit had been denied. No explanation of St. Charles' decision was offered. On October 5, 2004, sixty-six days after St. Charles issued its decision and forty days after Sprint filed this lawsuit, St. Charles issued a "Findings of Fact, Conclusions, and Decisions" in support of its decision. These Findings included conclusions and explanations for the denial of the permit.

The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be in writing." 47 U.S.C. § 332 (c)(7)(B)(iii) (emphasis added). The purpose of requiring writing is that when a dispute arises the court must determine, among other things, whether a decision denying a permit is supported by "substantial evidence." SBA Communications Inc. v. Zoning Com'n of Town of Franklin,164 F. Supp.2d 280, 290 (D. Conn. 2001).

Interpretations of the "in writing" requirement has created a split among the federal courts. For example, some courts require that a written decision must identify the reasons for the decision and link those reasons to evidence in the record, while others find that stamping the word "denied" on a zoning application is sufficient. Compare Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59 (1st Cir. 2001) (stating that written denials must contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence), and New Par v. City of Saginaw, 301 F.3d 390, 395-96 (6th Cir. 2002) (stating that a statement of denial, along with the votes of individual board members is not sufficient to satisfy the in writing requirement), with Gearon & Co., Inc. v. Fulton County, Ga., 5 F. Supp. 2d 1351, 1354 (N.D. Ga. 1998) (stating that a written denial without explanation satisfied the "in writing" requirements of the TCA).

The majority of courts, however, hold that the "in writing" requirement mandates that when local authorities deny and application they must indicate reasons for the denial and link these reasons to evidence in the record. See Western PCS II Corp. v. Extraterritorial Zoning Authority of City and County of Sante Fe, 957 F. Supp. 1230, 1236 (D. N.M. 1997) (determining that the TCA's "in writing" requirement was intended to permit reviewing courts to ascertain

rationale behind denials so that they can determine if the denial complies with requirements of statute, and a post-appeal transcription of proceedings is not sufficient), see also SBA Communications Inc., 164 F. Supp. 290 (finding that a letter stating that request was denied, without providing any explanation, does not meet the TCA's "in writing" requirement).

Although the Eighth Circuit has not yet ruled on this issue, the intent of the TCA's "in writing" requirement has been addressed by many courts. To be considered "in writing" a decision should (1) "be separate from the written record; (2) describe the reasons for the denial; (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." USOC of Greater Iowa, Inc. v. City of Bellevue, Nebraska, 279 F. Supp. 2d 1080, 1084-85 (D. Neb. 2003). "Permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale." Id. at 1084 (citing Southwestern Bell Mobile Sys., Inc v. Todd, 244 F.3d 51, 59-60 (1st Cir. 2001)).

The rational behind such a detailed writing requirement is essential because the TCA only allows 30 days to appeal an adverse decision to a district court. See 47 U.S.C. § 332(c)(7)(B)(v). To allow a defendant to provide its reasons after the 30 day limitations period has expired would preclude the ability of a tower applicant to attempt to resolve the concerns of the zoning authority before the filing of a lawsuit is necessitated. In addition, such a delay calls into question the reliability of the explanation and prevents courts from expeditiously addressing the case. At least one court has found that such delay is contrary to Congressional intent. Virginia Metronet, Inc. v. Board of Supervisors of James City County, Virginia, 984 F. Supp. 966, 973 (E.D. Va.

1999)(defendant's letter explaining the basis for its denial sent six days after the filing of plaintiff's lawsuit and thirty-four days after the denial of the application strongly suggested that the letter was pretextual).

The July 30, 2004 letter from St. Charles to Sprint simply denies Sprint's application for a conditional use permit. It does not describe the reasons for the denial, nor does it contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons. As a result, I find that the initial denial letter does not meet the "in writing" requirement of the TCA. The Findings issued by St. Charles on October 5, 2004 does state the reasons for the denial and explains the decision of the Council. The issue is whether this delayed explanation meets the "in writing" requirement of the TCA.

The TCA provides that those "adversely affected" by "final action" of a state or local government must file for a judicial review action within thirty days. 47 U.S.C. § 332(c)(7)(B)(v). Sprint contends that St. Charles' rationale for denying its permit should have been reduced to a writing at or within days of its rendering a decision to allow Sprint to react to the decision within the limitations period to file a lawsuit. St. Charles asserts that Missouri administrative law authorizes the release of a decision separated by time from the rationale of the decision.

In support of this contention, St. Charles offers <u>Holigan Homes Missouri, Ltd. v. City of Jackson et al.</u>, which allows for the issuance of findings within thirty days of denial by oral vote. 997 S.W.2d 109, 111 (Mo. Ct. App. 1999). An important distinction exists between <u>Holigan Homes</u> and the present case in that St. Charles waited over sixty days to issue its decision as opposed to thirty. A thirty day limitation for issuing the "in writing" would be important because the TCA mandates that a challenge to a denial of a permit must be filed in federal court within

thirty days of the decision. Even if I found that the Holigan Homes decision applied to the present case it does not help St. Charles' position. The finding that a thirty day delay is not unreasonable does not make St. Charles' sixty-five day delay timely.

Post-hoc rationales cannot serve as substantial evidence under the TCA: "[the decision maker] may not rely on rationalizations constructed after the fact to support the denial of [the applicant's] application." Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1220 n. 9 (11th Cir. 2002). St. Charles filed its rational for denying Sprint's application sixty-five days after it issued its decision and forty days after this lawsuit was filed. Such a delay impairs my ability to accurately analyze the existence and validity of the "substantial evidence" offered in support of St. Charles' decision. Such delay is also contrary to the requirements of the TCA.

As a result, I find that St. Charles' issue of Findings on October 5, 2004 failed to meet the "in writing" requirement of the TCA. Sprint shall have summary judgment on this issue.

*B. Substantial Evidence*

Alternatively, Sprint argues summary judgment based on a lack of "substantial evidence" supporting St. Charles' decision to deny the permit request, as required by the TCA. Even if I were to find that the "in writing" requirement was met, I would still conclude that St. Charles' decision violates the TCA because St. Charles fails to offer "substantial evidence" supporting its decision.

" Traditionally, the federal courts have taken an extremely deferential stance in reviewing local zoning decisions, limiting the scope of inquiry to the constitutionality of the zoning decision under a standard of rational review." Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 493 (2nd Cir. 1999) (citing Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981)).

The TCA, however, has modified this traditional standard so that the decision by the County Council of St. Charles to deny Sprint a conditional use permit must be supported by "substantial evidence contained in a written record." See 47 U.S.C. § 332(c)(7)(B)(iii).

Courts interpreting the substantial evidence standard requirement have applied "the traditional standard employed by the courts for review of agency action." New Par v. City of Saginaw, 301 F.3d 390, 396 (6th Cir. 2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mississippi Transp. Inc. v. NLRB, 33 F.3d 972, 977 (8th Cir. 1994) (quoting GSX Corp. v. NRLB, 918 F.2d 1351, 1356 (8th Cir. 1990). Under the substantial evidence test, I must take into account evidence that both supports and detracts from the St. Charles' decision and "must view the inherent strengths and weaknesses of the inferences drawn by the Board." GSX Corp., 918 F.2d at 1357 (internal quotations and citations omitted).

The Eighth Circuit recently reaffirmed this more stringent review, requiring an analysis of both favorable and unfavorable evidence in an investigation of substantial evidence: "[T]he review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision[;] we also take into account whatever in the record fairly detracts from that decision." O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003) (internal quotation and citation omitted) (discussing review of denial of social security benefits).

There is substantial evidence *in support of* Sprint's permit application. I have already noted that St. Charles' planning staff recommended that the application be granted, with a height reduction from 180 feet to 150 feet, because it complied with the applicable ordinances. I also

note that the ordinances do not contain a height restriction.

In addition, Sprint provided detailed information indicating the need for the tower and a summary of site searches. Sprint offered maps and information concerning current towers in the area, coverage gaps, and current cell phone coverage. Sprint completed a test utilizing a large balloon to examine the visual impact of the tower and provided detailed information on the proposed structure. Furthermore, Sprint furnished reports indicating that resident concerns about property value decreases are unsubstantiated.

In its Findings, St. Charles states that the reason for denying the permit was due to (1) opposition by residents and the City of Wentzville (2) the rapidly urbanizing nature of the area and concerns regarding the appropriateness of this site for a 180 foot tower (3) and that a height of 180 feet exceeds the staff recommendation of 150 feet.

*(1) Opposition*

The St. Charles county residents opposition to the Sprint's proposed tower express only generalized concerns about aesthetics and property values. The petitions, with a total of eighty-seven signatures, along with letters from residents, indicated opposition to the proposed location for the tower. Two residents spoke against the tower at the June 16, 2004 hearing. None of the residents offered any evidence in support of their opposition. A "not in my backyard" generalized objection does not constitute substantial evidence to support the denial of a tower permit. See Preferred Sites, LLC v. Troup Cty., 296 F.3d 1210, 1219 (11th Cir. 2002) (fifty-eight residents signed petitions against a cell tower and the court held that "the citizens' generalized concerns about aesthetics are insufficient to constitute substantial evidence....").

The City of Wentzville also opposed this tower because it violates Wentzville's ordinances

concerning height and proximity to residential structures.  Although the desire for uniform standards is not inappropriate, there is no regional-wide legislation at this point concerning telecommunications towers and the City of Wentzville's ordinances are not relevant to this analysis.

*(2) Rapidly Urbanizing Area*

The Findings provided a second justification for the denial based on a concern for the potential for further residential housing development in the area of the proposed tower site.  The speculative possibility of future residential growth in an area does not amount to substantial evidence that a tower permit application does not otherwise meet applicable standards.[1]  See Smart SMR of New York, Inc. v. Zoning Comm'n of the Town of Stratford, 995 F. Supp. 52, 57-58 (D. Conn 1998) (zoning commission's general disapproval of wireless towers in residential areas is not substantial evidence).

St. Charles' Findings do not sufficiently explain how the possibility of residential growth in the area led to its conclusion that Sprint's tower would not be in conformity with such future use.  The Council stated that opposition raised concerns as to "whether this is the appropriate site for this 180 foot tower."  These concerns are speculative.  The Findings do not contain substantial evidence that Sprint's tower would be incompatible with any potential future residential growth, nor does it contain evidence that the existence of such a tower in light of potential residential growth makes the issuance of a permit inconsistent with St. Charles' present ordinances.

---

[1] Telecorp Realty, L.L.C., v. Brd. of Adjustment of Story County, an unreported case, dealt with the possibility of residential growth in the future and found that such considerations were speculative and not substantial evidence.  2001 WL 1678736, *6 (S.D. Iowa Nov. 20, 2001).

It is possible that the relevant area in St. Charles may become more residential over time. However, this finding is not sufficient to conclude that Sprint's application failed to satisfy the criteria of St. Charles' zoning ordinance.

*(3) Application in Excess of 150 feet*

Sprint's application was for a 180 foot tower, and planning staff recommended a deduction in height from 180 feet to 150 feet. Opposition by residents was against any telecommunications tower in the area *no matter what the height proposed*. The City of Wentzville spoke against the proposed height of 180 feet due to their own ordinances limiting towers to a maximum of 85 feet. Either a 150 foot or a 180 foot tower would violate Wentzville's city ordinances. However, Sprint presented evidence that Wentzville had previously approved a Sprint tower proposal that was 150 feet. That tower was never built in Wentzville due to economic constraints. This evidence undercuts Wentzville's present opposition to the pending tower proposal based on concerns that it would not be in conformity with the surrounding area. Sprint is the only party that has offered evidence as to the need for the proposed tower to be a certain height. Sprint discussed both the range of coverage and the ability of sharing the tower with other providers as reasons for needing a 180 foot tower.

Without any substantial evidence as to the detriment of having a 180 foot tower, other than generalized aesthetic concerns, it does not appear that the height of the proposed tower is the basis for substantial evidence for denying the application.

*Conclusion*

I find that St. Charles failed to comply with the "in writing" and "substantial evidence" requirements of the TCA. Sprint requests an injunction as a remedy. Injunctions are a proper

form of relief under section 47 U.S.C. § 332(c)(7)(B)(v) and nothing in this case has suggested that remand would serve any purpose. See Omnipoint Corp. v. Zoning Hearing Board of Pine Grove Township, 181 F.3d 403, 410 (3rd Cir. 1999) (citing Cellular Telephone Co. v. Oyster Bay, 166 F.3d 490, 497 (2nd Cir. 1999)). I find it appropriate to grant an injunction ordering St. Charles to grant Sprint's application for a conditional use permit to construct a 180 foot tower, including accompanying equipment located next to the tower, at Agape Word Center as specified in Sprint's application.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff Sprint's motions for partial summary judgment [#6 and #21] against the County of St. Charles are **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant County of St. Charles shall issue a conditional use permit to Plaintiff Sprint in accordance with its application submitted on May 12, 2004.

**IT IS FURTHER ORDERED that** Defendant County of St. Charles' motions for summary judgement [#'s 32, 34, 37, and 39] are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of July, 2005.